**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
**CIVIL ACTION NO. 3:16CV-P186-GNS**


**JEREMY WAYNE WILLIAMS**                                                          **PLAINTIFF**

**v.**

**HARDIN COUNTY DETENTION CENTER** *et al.*                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motions for summary judgment by Defendants

Southern Health Partners (SHP), Christy Curry, and Lisa Puckett[1] (the SHP Defendants) (DN 67)

and by Defendants Hardin County and Danny Allen (the County Defendants) (DN 68).  Plaintiff,

proceeding *pro se*, filed a response to the SHP Defendants' motion (DN 74).

The Court gave Plaintiff an opportunity to file a supplemental response and provided

general guidance to Plaintiff in responding to a motion for summary judgment (DN 94).  Plaintiff

filed a motion for an extension of time to file a supplemental response (DN 95), which is

**GRANTED**, and a supplemental response to the motions for summary judgment (DN 98).

For the reasons that follow, the Court will grant Defendants' motions for summary

judgment.  Because the Court will enter summary judgment in favor of Defendants, it will also

deny Plaintiff's motion for partial summary judgment.

**I.**

Plaintiff was incarcerated at the Hardin County Detention Center (HCDC) at the time

pertinent to the complaint.  Upon initial review of the complaint and amended complaint under

28 U.S.C. § 1915A, the Court allowed Plaintiff's § 1983 claims of denial of medical/mental

---

[1] In the complaint, Plaintiff named this Defendant as "Lisa" identifying her as a "Psyche nurse."  In her answer, she identified herself as Lisa Puckett, RN.  The Court will use her last name herein.

health treatment under the Eighth Amendment of the United States Constitution and Section 17 of the Kentucky Constitution to proceed against Defendants Hardin County, HCDC Medical Staff, SHP, Curry, and Puckett in their individual capacities. The Court also allowed a state-law claim of failure to train and supervise to go forward against Defendant Allen in his individual capacity.

In the complaint, Plaintiff stated that while he was housed at HCDC from June 9, 2015, to March 1, 2016, he "filled out the proper medical request sick call slip form (SHP form 11/2014) from [SHP] provided to [HCDC] medical staffs – Medical department regarding his mental health issues and psychological conditions." He stated that in August 2015 he "was placed in an observation cell due to being a harm to others and/or himself" for seven days. He stated that during this time he "informed medical that he is a disabled veteran that received medication and been diagnosed with borderline bipolar, manic-depression, and ADD." Plaintiff maintained that the medical staff had him sign medical release forms to obtain his mental health records from the U.S. Department of Veterans Affairs (VA) and the Kentucky Department of Corrections (KDOC). He reported that he previously had been "prescribed Risperdal and Depacote from the VA for underlying mental health issues" and that he had been diagnosed by a psychiatrist with "acute anxiety disorder and moderate recurrent depression and was prescribed Celexa along with other medications throughout his incarceration from 2005-2015."

Plaintiff maintained that, while the HCDC medical staff requested his mental health records and "were made aware of his mental health issues and psychological conditions, they failed to provide psychiatric care/counseling, medical treatment, or prescribe the proper medications and refused him of his right to medical care or treatment." He stated, "On several requests, the medical staff wrote back on a request that, 'if it isn't/wasn't life threatening than

they don't have to treat [him]!' They also told him to wait until he was sentenced and have DOC take care of his problem." (Brackets by Plaintiff). He further stated, "Numerous other times either refused to answer or denied his requests and grievances." He also represented that "the doctor from [SHP] wouldn't reissue his eye drops (Ciprofloxacin) or a trial dosage of Depacote."

In the amended complaint, Plaintiff stated that Defendant Curry was the nurse practitioner in the medical department at HCDC and answered the majority of sick call requests and grievances while Plaintiff was at HCDC. He asserted, "She is the person who stated, 'if it wasn't/isn't life threatening than we don't have to treat you . . .' and 'to wait until he was sentenced and have DOC take care of his problem.'" He states that Defendant Curry was the nurse he spoke to when he was placed in the observation cell in August 2015. Plaintiff stated, "Majority of the decision for the medical department are made by Christy Curry and the weight falls upon her shoulders."

Plaintiff also stated that Defendant Puckett was "the psychologist (psych nurse) that's suppose to handle any complaints or inmates with psychological issues or needed medication." He asserted, "Plaintiff waited over 3 months wanting to speak with Lisa and didn't get to speak with her until he was in the observation cell, even though he sent several sick call request forms to her to be seen." He states that Defendant Puckett requested his medical records from the VA and KDOC. He stated, "Although, she sent off for the records, that way she can know the symptoms and get proper diagnosis, she failed to do anything or get medication prescribed when she was aware that mental issues or illness is present." He asserted that he was "denied psychiatric care/counseling, medication, and was refused the right to medical care especially when HCDC medical personnel (staff) had proof plaintiff suffers from mental illness and was in need of medication."

Further, Plaintiff stated that Defendant Allen "failed to properly train or advise his staff on resolving the continuous violation of his Constitutional Rights . . . ." He stated that Defendant Allen was "the main policymaking authority at HCDC or for Hardin County at the jail; thereby, holds him liable for deprivation of Plaintiff's Constitutional rights."

In their motion for summary judgment, the SHP Defendants argue that Plaintiff's medical and other records from his incarceration at HCDC show that they were not deliberately indifferent to his mental health needs. They state that when Plaintiff was booked into HCDC on June 9, 2015, he answered a list of standard medical questions and completed a suicide questionnaire with a HCDC deputy jailer, which they attach. According to the attached medical questions, Plaintiff was asked if he had "recently been treated for any medical or mental illness" and if he had any "medications you are taking or need to be taking[.]" Plaintiff answered "no" to these question. In addition, in the attached suicide questionnaire, Plaintiff was asked if he had "any serious medical or mental health conditions that may need attention while you are here" and whether he had "recently taken or been prescribed medication for emotional problems[.]" Plaintiff answered "no" to these questions, as well. The SHP Defendants report that after the standard medical questions and suicide questionnaire were completed, Plaintiff refused a medical intake screening, which would have been performed by a non-party SHP nurse, and they attach a Refusal of Medical Treatment and Release of Responsibility form signed by Plaintiff dated June 10, 2015.

The SHP Defendants further state that the day after Plaintiff was booked into HCDC, June 10, 2015, he submitted a sick call slip, attached to the motion, requesting to be seen for injuries he received during his arrest. They attach a Clinical Pathway/Patient Clinical Data Form, dated June 11, 2015, which shows that Plaintiff was examined by a non-party SHP nurse

on that date. The nurse noted light bruising on Plaintiff's right shoulder and the right side of his forehead. The SHP Defendants maintain that Plaintiff did not complain of mental health issues or request mental health treatment or medication during this examination.

In their motion, the SHP Defendants maintain that Plaintiff underwent a complete history and physical performed by Defendant Curry on June 23, 2015. Citing to the Admission Data/History and Physical Form dated June 23, 2015, which they attach, they state that at that time Plaintiff informed Defendant Curry that he suffered "from acute anxiety disorder/moderate recurrent depression" but did not indicate that he took medication for it. They maintain, "Once again, Plaintiff did not request mental health treatment or medication at that time."

The SHP Defendants report that Plaintiff submitted a second sick call slip, which they attach, on June 27, 2015, claiming that his left eye was red and irritated and that he had a sty on the inside of his eyelid. Citing an attached Clinical Pathway/Patient Clinical Data Form dated June 28, 2015, they report that Defendant Curry responded to Plaintiff's sick call request the following day and provided Plaintiff with eye drops to use in his affected eye. The SHP Defendants state that Plaintiff did not complain of mental health issues or request mental health treatment or medication at that visit.

The SHP Defendants attach a grievance Plaintiff submitted on July 25, 2015, in which he stated the following:

> I have filled out several sick call forms and request forms to be seen by medical for mental health needs and am being denied medical treatment for I've been diagnosed with Bipolor & ADD thru VA Medical Clinic in Grayson County, Kentucky and with Acute Anxiety Disorder/Moderate Recurrent Depression thru [KDOC] while at Luther Luckett Correctional Complex [LLCC] from 2009 to present.

However, the SHP Defendants assert, "There is absolutely nothing in Plaintiff's records to indicate that the assertions Plaintiff made in this grievance are true." They continue, "To the

contrary, Plaintiff had been seen on three separate occasions since coming into the facility on June 9, 2015, and while he reported a history of acute anxiety disorder/moderate recurrent depression, he never requested mental health treatment or medication."

The SHP Defendants attach an Inmate Request Form dated July 26, 2015, in which Plaintiff requested, "I need to speak with someone because I don't feel like living any more and just wish I'd die or someone to kill me. I feel people are plotting against me and out to get me and need to go to administrative seg." An officer wrote on the form, "Placed on suicide watch 7/26/15 1040." The SHP Defendants cite Plaintiff's Progress Notes from that date showing that Defendant Curry spoke with Plaintiff about his concerns that day, placed him in administrative segregation, and put Plaintiff on suicide watch to ensure his safety. The SHP Defendants maintain that Defendant Curry also contacted the Kentucky Jail Mental Health Crisis Network on that date so they could perform an evaluation of Plaintiff. The Kentucky Jail Mental Health Crisis Network Episode Report dated July 26, 2015, states that the evaluation indicated that Plaintiff "had been housed in maximum security due to his charges but [on July 25, 2015,] after the jail learned he is also a sex offender he was reclassified to [the sex offender] pod. He is unhappy with his new classification." The report also states, "When staff spoke to him about this he began demanding medication. . . . At booking he disclosed no history of suicide attempts or of treatment for emotional problems. No previous triages found." They also attach Suicide Watch Records showing the Plaintiff was monitored by HCDC officers approximately every 20 minutes while on suicide watch.

The SHP Defendants attach another Kentucky Jail Mental Health Crisis Network Episode Report dated July 31, 2015, to show that Plaintiff was re-triaged by a mental health professional on July 29 and 31, 2015, and his suicide risk status was reduced from high to moderate risk.

Citing a Kentucky Jail Mental Health Crisis Network Episode Report dated August 3, 2015, they state that Plaintiff was again triaged by a mental health professional on August 3, 2015, after he had been released to the general population for 48 hours with no issues. That report shows that Plaintiff denied any current suicidal thoughts, had no behavioral issues, and demonstrated no acute symptoms or distress. The report states, "Jail physician will discuss starting inmate back on his medication as they now have his records from the VA. Inmate has diagnosis of GAD, PTSD and panic disorder and was taking Depakote."

On July 30, 2015, Plaintiff signed an Authorization for Release of Patient Medical Record to Correctional Facility, which the SHP Defendants attach, in order for SHP employees to obtain his mental health and medication records from the VA Hospital in Eddyville, Kentucky. However, according to the SHP Defendants, Plaintiff had not been treated at the VA Hospitals in Eddyville, Paducah, or Hopkinsville, Kentucky. Plaintiff's medical records were located and faxed to the SHP personnel at HCDC by the VA Hospital in Louisville, Kentucky, on July 31, 2015. The SHP Defendants attach Plaintiff's medical records from the VA, which show that Plaintiff underwent previous mental health treatment in September of 2012 and that he had no active medications/prescriptions from the VA.

The SHP Defendants state that on August 4, 2015, the non-party medical director at HCDC reviewed Plaintiff's medical records from the VA which had been received on July 31, 2015. The VA Hospital records showed that Plaintiff had been put on a "trial dose" of Depakote in September 2012 but had not returned to the VA in 6-8 weeks as instructed. They attach the Physician's Order dated August 4, 2015, showing that the medical director issued an order to restart Depakote with a tapered dose of the medication to be taken twice daily and tapered up until the medication reached the therapeutic dose Plaintiff would be taking on a daily basis.

The SHP Defendants report that on August 9, 2015, Plaintiff submitted a Sick Call Slip-Medical Request form, attached to the motion, stating that he had been given Depakote for the past week and felt like his "anxiety was getting worse" and that he "couldn't breathe or felt like he was suffocating." The sick call slip shows that Defendant Puckett, a psychiatric nurse, answered it on August 10, 2015, stating "You need to give this med more time. You just started it the 5th – 5 days ago. You need to allow it time to become e @ the therapeutic level."

The SHP Defendants attach forms for Refusal of Medical Treatment and Release of Responsibility dated August 8, 9, 11, and 14, 2015, which show that Plaintiff refused to take the prescribed medication on those dates. The SHP Defendants also attach a Sick Call Slip-Medical Request form submitted by Plaintiff on August 14, 2015, where Plaintiff complains, "Not been taking meds in the morning []not getting because I take it at night and also you'll have me on to much Depacote which can be toxic (on 2000 mg)." The form shows that on the same date, a SHP nurse signing as "Christy RN"[2] responded, "You have been on a taper up dose. It has been stopped due to your refusals."

The SHP Defendants attach a grievance form Plaintiff submitted to HCDC stating, "I was taken off my medication although I have only been on it a week." The grievance shows that a SHP nurse signing as "Christy RN" responded, "You were not denied medical treatment. We started you on medication but you kept refusing to get up & take it. If it is not life sustaining, we are not obligated to continue trying to give it."

The SHP Defendants attach an Inmate Request Form dated October 2, 2015, in which Plaintiff requested to be transferred to administrative segregation or protective custody "because

---

[2] The SHP Defendants state in their motion that the form was signed by a non-party SHP nurse Christy Aubrey and not Defendant Christy Curry.

I'm in fear of my life because I'm in the sex offender pod. I don't want to be around anyone, talk to anyone and want to be left alone in my own cell." He stated he was going to trial on an assault charge and "can't afford getting into it with someone or into a fight before trial." The SHP Defendants state that Plaintiff was moved to administrative segregation as a result.

The same form shows Defendant Puckett saw Plaintiff on October 8, 2015. In her response, she wrote "Depakote – Spoke [with Plaintiff] – He is in a lockdown cell. He reports he chose to come to this cell. Denies [suicidal ideation/homicidal ideation]. He is future focused & awaiting his change to go to [Kentucky Correctional Psychiatric Center] KCPC for eval. I explain[ed] that there is a waiting list. He voices understanding."

The SHP Defendants attach a Sick Call Slip-Medical Request form dated October 9, 2015, in which Plaintiff complained that his left eye was red and irritated and requesting eye drops. The sick call slip shows that a non-party nurse responded on the same day and that Plaintiff refused treatment.

The SHP Defendants report that Plaintiff was transferred to KCPC for evaluation and treatment on October 15, 2015. They attach Plaintiff's Discharge Referral Form showing that he was discharged from KCPC and returned to HCDC on October 27, 2015. The form shows that Plaintiff was diagnosed with "Antisocial Personality Disorder; Conduct Disorder in childhood; Polysubstance Use Disorder; Unspecified Depressive Disorder" and that he was given a 30-day prescription for Remeron. They also attach a Sick Call Slip-Medical Request form Plaintiff submitted on October 30, 2015, stating that he had returned from KCPC and was prescribed medication and asking to be given his medication. A response was written on the form stating that Plaintiff's medication would start when it came in from the pharmacy. The SHP Defendants

9

attach Plaintiff's Medication Administration Record to show that Plaintiff began receiving Remeron on November 1, 2015.

The SHP Defendants attach a Sick Call Slip-Medical Request form submitted by Plaintiff on February 7, 2016, stating that he was now a state inmate and requesting transfer to a facility that would not charge him a fee for medication. The response written on the form stated that he needed to address his transfer request with the Class D coordinator. Plaintiff was transferred out of HCDC on March 1, 2016.

In the motion for summary judgment filed by the County Defendants, in regards to Plaintiff's deliberate indifference claims against Defendants Hardin County and HCDC Medical Staff, they state that they "defer to" the motion for summary judgment filed by the SHP Defendants "since it addresses the medical care received by Plaintiff and it is needless to duplicate and impose on the Court's time reading the same thing twice."

In response to the motion for summary judgment, Plaintiff states, "The defendant's refuse to accept responsibility for not properly following Intake Screening protocols even though they were notified that plaintiff suffers from mental & emotional problems on the Intake Screening Form." Plaintiff asserts that he notified the HCDC Medical staff that LLCC had his medical and mental health records and "instead they contacted Ky. State Penitentiary in Eddyville." He continues, "Plaintiff never referred that he had records at KSP. If defendants would have received the records from LLCC they'd seen that he was diagnosed with Acute Anxiety Disorder & Moderate Recrrent Depression and properly been able to treat him and get him the right medication."

Plaintiff further states, "Defendants continuously get hung up on the fact that plaintiff had been seen several times on medical issues unrelated to his mental health problems about why he

didn't mention anything to HCDC medical staff." He asserts that "the medical staff only addresses issues filled out on the medical sick call slips and has inmates fill out additional forms if inmates have other concerns they need attention for and normally won't answer or address other problems until medical has a medical slip for the specific problem." He continues, "The defendants barely will comply with answering the ones they already have let alone any other medical problems brought to their attention." He argues, "Defendant's failed to follow up plaintiff's Intake Screening from June 23, 2015. They never performed the Brief Jail Mental Health Screen (BJMHS) as required in HCDC Policy & Procedures or obtain his records when plaintiff notified them where his records were."

In his supplemental response to the motion for summary judgment, Plaintiff states that he is currently under the care of a clinical social worker and psychiatrist and receiving medication for psychiatric diagnoses. He states that HCDC did not have a sufficient amount of nurses to handle the psychiatric needs of inmates. Plaintiff also states,

> The defendants now are saying that the plaintiff refused or did not request mental health treatment or medications. It's the responsibility of the nurses at [HCDC] and [SHP] to take preventive measures and adequate screen inmates that have a mental illness. Some inmates during intake or after being booked into the jail may not be in the right state of mind and may not immediately request medical attention due to be intoxicated, under the influence of drugs, delusional, or in shock from the incident of their arrest. The plaintiff was arrested and convicted on Assault Under Extreme Emotional Disturbance. Consequently, for three days he was severally depressed and psychically sick from his ordeal. It wasn't until several days later he was consciously aware he was going to be incarcerated for awhile and then informed the medical staff he's going to need mental health care and medication. When the medical staff at H.C.D.C. finally screened the plaintiff and he told them he had a history of acute anxiety disorder/moderate recurrent depression. It was their duty to see if additionally treatment is required but they weren't properly trained or supervised to handle inmates with mental health issues.

In the supplemental response, Plaintiff also states that he had received Depakote during a previous incarceration at HCDC from January to May 2013 and that his family would drop it off

to him.  He states, "The medical staff at H.C.D.C. and the defendants in this case didn't disclose that in their summary judgment which would prove it was in their records that the plaintiff needed treatment and medication."  He maintains that the prescription he received for Depakote in August 2015 was too high a dose and that he never spoke with a psychiatrist while at HCDC.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof.  *Id.*  Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof.  *Id.*  If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury.  *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990).  The moving party, therefore, is "entitled to

a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

**III.**

To establish an Eighth Amendment[3] violation premised on inadequate medical or mental health care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the

---

[3] Plaintiff identified himself as a convicted inmate in the complaint, but it appears that he may have been a pretrial detainee while housed at HCDC. While the Eighth Amendment provides a convicted inmate the right to be free from cruel and unusual punishment, the Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citing *Richko v. Wayne Cty.*, 819 F. 3d 907, 915 (6th Cir. 2016)). "The Sixth Circuit has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Id.* (quoting *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). At this time, the Sixth Circuit has recognized only one explicit exception to the general rule that rights under the Eighth Amendment are analogous to rights under the Fourteenth Amendment. The exception applies only to excessive-force claims brought by pretrial detainees. *Id.* at 938 n.3 (noting that *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), abrogated the subjective intent requirement for Fourteenth Amendment excessive-force claims and that the standard which governs claims by pretrial detainees may be shifting, but declining to apply the *Kingsley* standard to a claim of deliberate indifference to a serious medical need brought by a pretrial detainee); *see also Walker v. Miller*, No. 18-3209, 2018 U.S. App. LEXIS 29348, at *3 (6th Cir. Oct. 17, 2018) (continuing to apply the traditional standard to a deliberate indifference to a serious medical need claim brought by a pretrial detainee). Therefore, the Court will analyze Plaintiff's claims of denial of mental health care under the Eighth Amendment's deliberate-indifference standard.

risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126

(6th Cir. 2003) (citing *Farmer*, 511 U.S. at 837-47).  Less flagrant conduct, however, may still

evince deliberate indifference where there is "a showing of grossly inadequate care as well as a

decision to take an easier but less efficacious course of treatment."  *Terrance*, 286 F.3d at 843

(citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).  Such grossly inadequate care

is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the

conscience or to be intolerable to fundamental fairness.'"  *Id*. at 844 (quoting *Waldrop v. Evans*,

871 F.2d 1030, 1033 (11th Cir. 1989)).  "Deliberate indifference is the reckless disregard of a

substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice."

*Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36;

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Moreover, the standard applied in reviewing the actions of prison doctors and medical

staff in this type of case is deferential.  *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754,

762 (3d Cir. 1979).  Where a prisoner has received some medical attention and the dispute is

over the adequacy of the treatment, federal courts are generally reluctant to second guess medical

judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537

F.2d 857, 860 n.5 (6th Cir. 1976).  A court generally will not find deliberate indifference when

some level of medical care has been offered to the inmate.  *Christy v. Robinson*, 216 F. Supp. 2d

398, 413-14 (D.N.J. 2002).  Mere disagreement over medical treatment cannot give rise to a

constitutional claim of deliberate indifference.  *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir.

1996).  Thus, a difference in medical judgment between an inmate and prison medical personnel

regarding the appropriate diagnosis or treatment is not enough to state a deliberate indifference

claim. *Ward v. Smith*, No. 95-6666, 1996 U.S. App. LEXIS 28322, at *2 (6th Cir. Oct. 29, 1996).

Upon review, the Court finds that Plaintiff's mental health complaints satisfy the objective component as a sufficiently serious medical need.

However, Plaintiff's medical and other records show that he received treatment for his mental health complaints and therefore fails to satisfy the subjective component. When he was booked into HCDC on June 9, 2015, he was asked if he had any mental health conditions that may need attention and whether or not he had recently been prescribed medication for emotional problems and he answered "no." He was given a complete physical on June 23, 2015, in which he informed Defendant Curry that he suffered from acute anxiety disorder and moderate recurrent depression but did not request mental health treatment or medication at that time. He submitted two sick call slips on June 10 and 27, 2015, concerning medical complaints for other ailments but did not submit any sick call slips for mental health treatment during this time.

The records attached to the SHP Defendants' motion show that on July 25, 2015, Plaintiff wrote in a grievance that he had "filled out several sick call forms and request forms to be seen by medical for mental health needs and am being denied medical treatment . . . ." However, Plaintiff has not produced any such sick call form or request showing that he had requested mental health treatment at any time before his grievance on July 25, 2015. The records show that the following day, on July 26, 2015, Plaintiff reported that he had suicidal thoughts and that he was immediately placed on suicide watch and seen by Defendant Curry that day. On the same day, Defendant Curry also contacted the Kentucky Jail Mental Health Crisis Network who evaluated Plaintiff that day. Plaintiff was monitored by HCDC officers while on suicide watch

15

and was re-triaged by the Kentucky Jail Mental Health Crisis Network on July 29 and 31, 2015, and August 3, 2015.

Plaintiff signed an authorization for release of his medical records on July 30, 2015, and while Plaintiff maintains that the records were erroneously requested from the Kentucky State Penitentiary, the records show, and Plaintiff does not dispute, that the SHP Defendants received Plaintiff's records from the VA on July 31, 2015, and that on August 4, 2015, he was prescribed Depakote, and began taking it on August 5, 2015.[4]

Thereafter, on August 9, 2015, Plaintiff voiced complaints about the medication and Defendant Puckett advised him to give the medication more time to be effective. Plaintiff does not dispute that he began to refuse the administration of the Depakote in the morning, and the parties agree that the medication was stopped due to Plaintiff's refusals. The records show that Plaintiff was seen by Defendant Puckett on October 8, 2015, and denied suicidal ideation. Plaintiff does not dispute that there is no record of any request made for mental health treatment after the Depakote was stopped and before he was transferred to KCPC on October 15, 2015. When he was returned to HCDC on October 27, 2015, he was given a prescription for Remeron, which HCDC administered to him beginning on November 1, 2015. Plaintiff made no further complaints that he was denied mental health medication until he was transferred out of HCDC in March 2016.

Upon review, the Court finds that when Defendants were first alerted by Plaintiff on July 26, 2015, of his suicidal thoughts and request for medication, he began receiving treatment – he saw Defendant Curry the same day, was evaluated by the Kentucky Jail Mental Health Crisis

---

[4] With regard to Plaintiff's assertion, for the first time in his unverified supplemental response to the motions, that he had been given Depokote at HCDC during a previous incarceration in 2013 and that Defendants should have therefore known he needed the medication, Plaintiff attaches no medical records or other evidence to support this. Moreover, Plaintiff does not explain why he did not mention this to HCDC or SHP personnel at the time of the events alleged in the complaint.

Network on that day and in subsequent days, and was monitored while on suicide watch. He

began receiving Depakote on August 5, 2015. The medication was only stopped because

Plaintiff refused doses of it. The SHP Defendants have established through evidence that

Plaintiff was not denied mental health treatment.

Plaintiff disputes the adequacy of the treatment he received. However, as stated above,

dispute over the adequacy of treatment is not sufficient to state an Eighth Amendment claims.

Plaintiff's complaints, including those about the dosage of Depakote he was prescribed, may

sound in state tort law, but negligence is not sufficient to state an Eighth Amendment claim. *See*

*Rhinehart v. Scutt*, 509 F. App'x 510, 513-514 (6th Cir. 2013) (holding that inmate "has not

alleged more than a difference of opinion with respect to his medical treatment, as a general rule,

where a plaintiff has received care, he will not be able to sustain a claim of deliberate

indifference") (citation omitted); *White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir.

2004) (doctor's refusal to prescribe inmate's preferred medications "amounted to only

negligence or a difference of opinion" rather than "a deliberate indifference to his medical

needs") (citations omitted); *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003) (holding that

inmate and medical provider's disagreement "over the preferred medication to treat [inmate's]

pain . . . does not support an Eighth Amendment claim" and noting that "[t]he district court

properly declined to second-guess [the doctor's] medical judgment").

Moreover, while Plaintiff maintained in his complaint and in his responses to the motions

for summary judgment that he was told "'if it wasn't/isn't life threatening than we don't have to

treat you . . .[,]'" in a response to a grievance, a SHP nurse stated, "You were not denied medical

treatment. We started you on medication but you kept refusing to get up & take it. If it is not

life sustaining, we are not obligated to continue trying to give it." Therefore, it is clear from the

evidence that the statement was made in the context of Plaintiff's refusals to take his prescribed medication. Moreover, assuming that Plaintiff's assertion that he was told that he would have "'to wait until he was sentenced and have DOC take care of his problem'" were true, the medical records show that Plaintiff was not forced to wait to receive medication until after he was sentenced; he received a prescription for Depakote before he was sentenced but began refusing it.

Having reviewed the briefing on Defendants' motions for summary judgment, as well as Plaintiff's motion for partial summary judgment and the attachments thereto, Plaintiff undisputedly received medical attention for his mental health complaints. The Court will not second guess Defendants' medical judgment now. *See Westlake*, 537 F.2d at 860 n.5. While Plaintiff may disagree with the diagnosis and treatment, such disagreement does not rise to the level of a constitutional violation. *Id.* Therefore, the SHP Defendants, Hardin County, and HCDC Medical Staff are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

In addition, Section 17 of the Kentucky Constitution prohibits "cruel punishment." The legal analysis for Plaintiff's claims under the Eighth Amendment and Section 17 of the Kentucky Constitution is the same. *See Simms v. City of Harrodsburg*, No. 06-CV-104-JMH, 2007 U.S. Dist. LEXIS 70250, at *15 (E.D. Ky. Sept. 21, 2007) ("[Section 17 of the Kentucky Constitution] is nearly identical in language to the Eighth Amendment of the United States Constitution, and it has been treated very similarly by Kentucky Courts.") (citing *Workman v. Commonwealth*, 429 S.W.2d 374, 376 (Ky. 1968)). As such, the Court's analysis of Plaintiff's Eighth Amendment claims is equally applicable to the claims arising under Section 17, and the SHP Defendants, Hardin County, and HCDC Medical Staff are entitled to summary judgment on Plaintiff's claims under Section 17, as well.

Finally, having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim against Defendant Allen for negligent training and supervision. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim" in situations when "the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, that state-law claim will be dismissed without prejudice.

**IV.**

For the foregoing reasons, **IT IS ORDERED** that the motions for summary judgment by the SHP Defendants (DN 67) and by the County Defendants (DN 68) are **GRANTED**.

The Court having determined that Defendants are entitled to summary judgment, **IT IS ORDERED** that Plaintiff's motion for partial summary judgment (DN 56) is **DENIED**.

The Court will enter a separate Judgment dismissing the case.

Date:   March 29, 2019

Greg N. Stivers, Chief Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4416.010